81 So.2d 600

**AUBURN INSURANCE AGENCY, Inc.**

v.

**FIRST NATIONAL BANK OF AUBURN.**

5 Div. 615.

Supreme Court of Alabama.

June 16, 1955.

Roberts H. Brown, Opelika, Knox M.
McMillan, Auburn, Brown & McMillan,
Auburn, for appellant.

Walker & Walker, Opelika, for appellee.

PER CURIAM.

This is an appeal by one of the respond-
ents from a decree overruling its demurrer

to a bill in equity. The other respondent did not demur but answered the bill admitting the allegations. Appellant is the Auburn Insurance Agency, to which we will sometimes refer as the second mortgagee. The other respondent is the Auburn Manufacturing Company, to which we will sometimes refer as the mortgagor. Appellee is the First National Bank of Auburn, to which we will sometimes refer as the first mortgagee.

■ The bill seeks the foreclosure of several mortgages and makes the second mortgagee a party. The second mortgagee is a necessary party to affect its rights. Thomas v. Barnes, 219 Ala. 652(3), 123 So. 18; Bank of Luverne v. Turk, 222 Ala. 549, 133 So. 52; Sims Chancery Practice section 148. The bill seeks to enforce an equity of foreclosure and has before the court the proper and necessary parties, and was filed after default had occurred. The demurrer by the second mortgagee to the equity of the bill was properly overruled so far as that ground is concerned.

■ It is insisted in appellant's brief that grounds 7, 8 and 15 of the demurrer should have been cause to sustain the demurrer to the bill as a whole. Ground 7 is that the allegations of the bill are vague and indefinite, but it does not undertake to point out wherein they are vague and indefinite and serves no purpose in the demurrer. Ground 8 undertakes to set out in what respect the allegations are vague and indefinite by alleging that the bill "fails to show a complete and accurate statement of the indebtedness allegedly secured by the mortgages and security instruments allegedly held by the complainant".

■ With respect to that contention the bill alleges that the mortgagor is indebted to complainant, the mortgagee, in the amount of $87,505.76, to which is to be added interest and solicitors' fees. That the indebtedness is evidenced by numerous documents, therein particularly set out, and a mortgage loan extension agreement dated October 27, 1952, executed by said mortgagee and mortgagor,—a copy of which is attached as an exhibit. It recites an indebtedness as of that date of $36,000, evidenced by numerous notes and mortgages which are later described in the bill, and also the execution on that day by the mortgagor of a promissory note and chattel mortgage for $36,000 due November 27, 1952.

The extension agreement provides that it is a renewal of the earlier notes, that payment is secured by the mortgages particularly described in it, and that if default is made in the payment of said note the bank could foreclose the mortgages forthwith. There was a default, after which this bill was filed.

The bill alleges in paragraph four that when said extension agreement and composite note and mortgage were executed on October 27, 1952 to the bank, the mortgagor executed to the second mortgagee a second mortgage on a part of the real and personal property included in the various mortgages to the first mortgagee given to secure the debt. A copy of the second mortgage was attached. That the second mortgagee knew of said mortgage loan extension agreement and of its terms and knew that the mortgages mentioned in it were to secure said debt to the first mortgagee. Said second mortgage contains a provision that it is a second mortgage and subordinate to the mortgage made by the mortgagor to complainant dated October 27, 1952. The extension agreement, executed on the same day, referred to six notes and mortgages theretofore given by the mortgagor to the bank, or assumed by it, beginning with the first dated October 22, 1951 on real estate; the second dated December 4, 1951 on personalty; the third dated November 30, 1951 on real estate; the fourth dated February 2, 1950 on personalty; the fifth dated October 23, 1951 on personalty, and the sixth dated January 11, 1952 on personalty, and another on personalty, then and there executed, including the entire indebtedness owing at that time.

The chattel mortgage of October 27, 1952 has attached to it an agreement executed at the same time by the bank, the mortgagor and second mortgagee, whereby the mort-

gagor agreed and covenanted that the chattel mortgage executed October 27, 1952, recorded in Book 384, at page 362, in the probate office of Lee County "shall be and is in all things superior" to the mortgage executed by the mortgagor to the second mortgagee dated October 22, 1951, and recorded in Book 369, at page 418. Mortgages numbered 1, 2, 3 and 7, supra, each contains the following clauses:

"1. That so long as the indebtedness secured by this mortgage shall remain outstanding and unpaid, in whole or in part, the mortgagor agrees to keep the improvements on said property in as good condition as they now are, and not to permit any waste thereof, and to pay and discharge as the same becomes due all taxes or assessments or other charges that may be levied upon or accrue against said property, and all other debts that may become liens or charges against said property for improvements that may hereafter be made thereon and not permit any lien to accrue or remain on said real property or on the improvements, or any part thereof, which may take precedence over the lien of this mortgage.

"2. The mortgagor herein agrees to cause the improvements on said real property to be insured against loss by fire and tornado for not less than an amount equal to the mortgagor's interest hereunder in reliable insurance companies, satisfactory to the mortgagee, his successors or assigns, until the indebtedness hereby secured is fully paid, loss if any payable to the mortgagee, his successors or assigns, as his interest may appear, and said insurance policies shall be delivered to mortgagee.

"3. In the event the mortgagor fails to insure said property as herein agreed or to pay the taxes which may be assessed against the same, or any liens or claims which may accrue thereon, the mortgagee, or his assigns, are hereby authorized at their election to insure same and to pay the cost of such insurance, and also to pay said taxes,

liens and claims, or any part thereof, and the mortgagor hereby agrees to refund on demand the sum or sums so paid with interest thereon at the rate of 6% per centum per annum, and this mortgage shall stand and be security therefor."

Paragraph 4 of the bill contains the following:

"At the time the Auburn Insurance Agency, Inc., accepted the said second mortgage, it knew of the aforesaid mortgage loan extension agreement and of its terms, knew that the above listed mortgages, which are hereto attached as exhibits, secured the payment of said indebtedness of $36,000.00 to the bank, and knew, as shown on the face of said Exhibit C, that the said above listed mortgages secured the payment to the bank of any additional respective mortgages on account of any future payments, advances or expenditures made by the said mortgagees or transferees. And the complainant avers that the said total indebtedness of $87,505.76 of the Manufacturing Company to the bank consists of the said original indebtedness of $36,000.-00; money advanced for the payment of insurance premiums on said mortgaged property; money advanced for the payment of taxes on said mortgaged property; money advanced for the necessary repairs of the machinery and buildings included in said mortgages in order to render the same useable; legal fees incurred in protecting the said property and in drafting legal papers which were necessary to protect the bank's interest in connection with said mortgaged property; money advanced for additional equipment necessary in order to render the mortgaged property useable; interest that has accrued on said mortgaged indebtedness; and other advances made by the bank to the said Manufacturing Company as provided by the terms of said mortgages. The said mortgage to Auburn Insurance Agency, Inc. is second and subservient to the aforesaid mortgages

to the bank and subject to the prior satisfaction of the bank's said mortgage indebtednesses against the said Manufacturing Company."

The question at this point is whether these allegations are so vague and indefinite as to render them subject to demurrer on that ground. We think not.

In a suit of this nature an accounting is incidental and may be had with or without a reference. The bill involving an accounting need not make an itemized statement of the account. Kelly v. Wollner, 201 Ala. 445, 78 So. 823. Here it makes allegation of the total amount of the indebtedness, how it is evidenced as to the $36,000, Palmer v. Sulzby, 185 Ala. 166, 64 So. 368, and the origin and nature of the consideration for the balance of the debt.

The prayer seeks to have the court ascertain and fix the amount of the principal, interest and a reasonable attorneys' fee, all as secured by the mortgage. This is all that good pleading in such a suit requires in connection with the prayer. Taylor v. Shaw, 256 Ala. 467, 55 So.2d 502; Garontakis v. Sparks, 222 Ala. 421, 132 So. 896; Stathis v. Sparks, 220 Ala. 689, 127 So. 169.

We think that grounds 7 and 8 of the demurrer to the bill as a whole are not sufficient to require the demurrer to be sustained.

Ground 15 of the demurrer to the bill as a whole is also insisted on. The substance of it is that complainant had notice of the second mortgage at the time it made the additional loans to the mortgagor.

We note here that the bill in connection with its exhibits shows that to be a fact, and therefore it is not a "speaking" ground of demurrer. We think this insistence should be treated in connection with the second assignment of error, which is for overruling the demurrer addressed to that aspect of the bill which seeks a decree that the mortages of appellant are second and subordinate to the mortgages of appellee. The same grounds are assigned which include No. 15, supra. It seems that the insistence

of appellant at this point is that the advancements made after October 27, 1952, when the extension agreement and other instruments were executed, were with a knowledge by the bank of the existence of the second mortgage, and therefore to that extent the mortgages of the bank are inferior to those of appellant and the bank is not entitled to relief in all respects superior to the rights of appellant as prayed for in the bill. That would not affect the equity of the bill and that aspect of it to the extent of the $36,000 recited in the extension agreement as then due and owing, of which appellant had full knowledge when it accepted a subordinate status by the written instrument, supra (Exhibit B–7 to the bill of complaint).

Appellant's mortgage on real estate and personalty was also executed on October 27, 1952, and is the first time appellant had a mortgage on real estate. Although that mortgage to appellant recites that it is second to the mortgage that day executed to the bank, which only covers chattels, it is second in time and effect to two real estate mortgages to the bank, which were duly recorded and which contain the same clause as to future advances. The same principles are applicable in respect to this question to the mortgage of October 27, 1952 on chattels and two mortgages on real estate.

The question therefore recurs as to whether the advances made after October 27, 1952, as alleged in the bill, have priority over the mortgages to appellant which are second in priority to all the mortgages to the bank. The bill seeks to have that relief. By the demurrer and in argument appellant controverts that contention.

We are not confronted with a situation where the first mortgage provides in general terms for future advances, without any obligation on the part of the mortgagee to make them, nor any necessity to do so in order to preserve the security from loss or deterioration or from being subjected to prior liens, but pursuant to that authority the mortgagee makes additional advances, accepted by the mortgagor, on the strength of that security with actual knowledge

when he does so that there is a second mortgage on the same property. We referred to that state of facts in the case of Farmers' Union Warehouse Co. v. Barnett Bros., 223 Ala. 435, 137 So. 176. In that case no notice of the second mortgage was shown to have been given to the first mortgagee when the future advances were made. The record of the second mortgage was not enough for that purpose.

We do not find a case directly in point, but we have some cases on the general subject. The first one seems to be Lovelace v. Webb, 62 Ala. 271. In it the mortgage recited a debt of $300 advanced to make a crop, which was not all advanced at the time but there was a verbal agreement that it would be, and it was advanced during the year. Before it was advanced executions on judgments were issued against the mortgagor, of which the mortgagee had no notice. The executions created a lien subsequent to the mortgage. There was held to be a duty by the mortgagee to make the advances. The second lien did not affect that duty, and for the advances so made the mortgage took precedence.

When the controversy is solely between the mortgagor and mortgagee there is not much difficulty. Forsyth v. Preer, 62 Ala. 443; Wilkerson v. Tillman, 66 Ala. 532; Collier v. Faulk, 69 Ala. 58; Huckaba v. Abbott, 87 Ala. 409, 6 So. 48; Manchuria S. S. Co. v. Harry G. G. Donald & Co., 200 Ala. 638, 77 So. 12; Thomas v. Blair, 208 Ala. 48, 93 So. 704; First National Bank v. Bain, 237 Ala. 580, 188 So. 64; Boger v. Jones Cotton Co., 238 Ala. 180, 189 So. 737.

In Collier v. Faulk, supra, it is said that a mortgage to secure future advances in good faith is valid "not only as between the parties, but also as against subsequent purchasers and incumbrancers, so far, at least as respects *advances made before the equities of such purchasers or incumbrancers have attached*". (Italics supplied.)

In Guaranty Savings, Building & Loan Ass'n v. Russell, 221 Ala. 32, 127 So. 186, a mortgage not only secured a named sum but also sums which may be expended by the mortgagee for taxes, liens, charges and insurance, which sums were so expended. Thereafter a loan was made by another taking a mortgage on the property. It was held that such sums were properly included in the first mortgage and superior to the second. But in that case those expenditures had been made before the second mortgage was executed.

The legal status when advances or expenditures are made after the execution of the second mortgage and with actual knowledge of it, has been treated as follows in 36 Am.Jur. 808:

"Indeed, the cases are generally agreed that where the mortgagee is bound by his contract with the mortgagor to make advances in the future, or where the right to decline depends on facts dehors the instrument, and which may be the subject of dispute or contention, he will take precedence over any subsequent encumbrance given by the mortgagor, although he may have actual notice of such encumbrance at the time the advance is made."

An elaborate annotation of the subject appears in 138 A.L.R. 566 et seq. It is there stated that if the first mortgagee has the option by the terms of the mortgage to make the future advances, and does so after a second mortgage is made and with knowledge of that mortgage, those advances are ordinarily subordinate to the second mortgage.

But there are limitations expressed in the cases and further applicable principles. One limitation seems to make a difference when the second mortgage is expressly made subject to the first mortgage which has provision for optional future advances. 138 A.L.R. 571. But we need not rest the result on that theory. Another limitation is that, to have such effect, the right to make the future advances must be with the consent of the mortgagor given when the advancement is made, and when the mortgagee does not have the right to make the advance independently of the consent of the mortgagor. This is on the theory that by executing the second mortgage, he has

estopped himself from making an agreement or giving consent in derogation of the rights granted by the second mortgage. The optional right cases are substantially all controlled by the circumstance that the mortgagee had no right to make further advances without the concurrent request or consent of the mortgagor. It is thus expressed: "Where, by the terms of the mortgage, the mortgagee is given a right to make further advances or expenditures on the security of the mortgaged premises, whether or not the mortgagor shall request or desire the same, a contract interest is created which is as plainly entitled to protection as would be an option to purchase the whole of the mortgaged premises. When such an interest is put on record there is surely little reason to say that subsequent encumbrancers may impair or destroy it because it is only an option. That one may elect not to enjoy his property or exercise his rights certainly does not remove them beyond the protection of the law". 138 A.L.R. 572.

The foregoing is consistent with our case of Guaranty Savings, Building & Loan Ass'n v. Russell, supra.

 The expenditures alleged in the bill to have been made after October 27, 1952 were of that sort. If some of the expenditures or advancements in excess of the $36,-000, which were made after October 27, 1952, were not of the sort expressly provided for in the mortgages to the bank and of such sort as not to be supported by the principle just stated, that issue is not raised by a demurrer to a bill which alleges that they were of such sort.

There are only two assignments of error. One is for overruling the demurrer addressed to the bill as a whole and the other is for overruling the demurrer addressed to that aspect of the bill seeking that it be adjudged and decreed that the mortgages of respondent (appellant) are second and subordinate to the mortgages of complainant.

The argument made limits the second assignment to the expenditures and advances made after October 27, 1952. As to the amount of the indebtedness then existing and thereby secured it is not controverted but that the bank's mortgages are superior according to the allegations of the bill. While it is doubtful that the state of the pleading is technically sufficient to require a consideration of the controverted question, we find that point is not made and it is argued on its merits. On that basis, we think, the decree overruling the demurrer to the bill as a whole and to a certain aspect of it as stated above, should be affirmed.

The foregoing opinion was prepared by Foster, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, GOODWYN and MAYFIELD, JJ.